UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

WILLIAM RONALD CLARK,

Petitioner,

v.

RENEE BAKER, et al.,

Respondents.

Case No. 3:12-cv-00579-MMD-VPC

ORDER

This counseled habeas petition is before the Court for final disposition on the merits (dkt. no. 48). Respondents filed an answer to the remaining grounds (dkt. no. 58), and petitioner William Ronald Clark filed a reply (dkt. no. 60).

I.     PROCEDURAL HISTORY AND BACKGROUND

A jury convicted Clark of count 1: robbery with the use of a deadly weapon; count 3: assault with a deadly weapon; count 4: discharging a firearm out of a motor vehicle; and count 8: assault with a deadly weapon (exhibits to respondents' first motion to dismiss, dkt. no. 22, Exh. 83).[1] Clark was convicted in connection with an incident in which he robbed several acquaintances in the garage of a townhouse at gunpoint, pointed a gun in the face of Jessica Seitles, and later fired a gun from a car that Andrew Wiggins was driving when they fled the scene.  The state district court adjudicated Clark under Nevada's small habitual criminal statute and sentenced him to four concurrent terms of eight to twenty years. (Exh. 43.) The court ordered the sentences to be served

_____

[1]Exhibits referenced in this order are exhibits to respondents' first motion to dismiss, dkt. no. 22, and are found at dkt. nos. 23-27.

consecutive to the term imposed in a separate case. (*Id.*) Judgment of conviction was filed on May 8, 2008. (Exh. 44.)

The Nevada Supreme Court affirmed Clark's convictions on December 3, 2009. (Exh. 55.) Remittitur issued on December 29, 2009. (Exh. 56.)

Petitioner filed a state postconviction petition for writ of habeas corpus on November 30, 2010. (Exh. 58.) The state district court conducted an evidentiary hearing and ultimately denied the petition. (Exhs. 68, 69.) Petitioner appealed, the Nevada Supreme Court affirmed the denial of the petition on October 8, 2012, and remittitur issued on November 2, 2012. (Exhs. 98, 105, 106.)

Petitioner dispatched his federal habeas corpus petition on October 30, 2012 (dkt. no. 8). This Court appointed counsel, and petitioner filed a counseled first-amended petition on October 24, 2014 (dkt. no. 48). Respondents have now answered the remaining grounds (dkt. no. 58).

## II.   LEGAL STANDARDS

### A.   Antiterrorism and Effective Death Penalty Act (AEDPA)

28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act (AEDPA), provides the legal standards for this court's consideration of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S.

685, 693-694 (2002). This Court's ability to grant a writ is limited to cases where "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer*, 538 U.S. at 73 (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell*, 535 U.S. at 694.

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

To the extent that the state court's factual findings are challenged, the "unreasonable determination of fact" clause of § 2254(d)(2) controls on federal habeas review. *E.g., Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir.2004). This clause requires that the federal courts "must be particularly deferential" to state court factual

determinations. *Id.* The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous." *Lambert,* 393 F.3d at 973. Rather, AEDPA requires substantially more deference:

> . . . [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir.2004); *see also Lambert*, 393 F.3d at 972.

Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence. The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *Cullen*, 563 U.S. at 181.

## B.   Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are governed by the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland,* the Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense. *Williams*, 529 U.S. at 390-91 (citing *Strickland*, 466 U.S. at 687). To establish ineffectiveness, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id.* To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id.* Additionally, any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. It is the

petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy. *Id*.

Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an objective standard of reasonableness, . . . under prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (internal quotations and citations omitted). When the ineffective assistance of counsel claim is based on a challenge to a guilty plea, the *Strickland* prejudice prong requires a petitioner to demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of, the *Strickland* standard. *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*.

The United States Supreme Court has described federal review of a state supreme court's decision on a claim of ineffective assistance of counsel as "doubly deferential." *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 120 (2009)). The Supreme Court emphasized that: "We take a 'highly deferential' look at counsel's performance . . . through the 'deferential lens of § 2254(d).'" *Id*. at 190 (internal citations omitted). Moreover, federal habeas review of an ineffective assistance of counsel claim is limited to the record before the state court that adjudicated the claim on the merits. *Cullen*, 563 U.S. at 181-84. The United States Supreme Court has specifically reaffirmed the extensive deference owed to a state court's decision regarding claims of ineffective assistance of counsel:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.* at

689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S. at ——, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S. at ——, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington*, 562 U.S. at 105. "A court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Id.* at 104 (quoting *Strickland*, 466 U.S. at 689). "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Id.* (internal quotations and citations omitted).

## III.   INSTANT PETITION

### A.   Ground 1

Clark asserts that the State failed to memorialize and disclose that (a) it granted witness Andrew Wiggins immunity from prosecution in exchange for his testimony; and (b) witness Jessica Seitles received favorable treatment with respect to a drug possession charge in violation of his Fifth, Sixth and Fourteenth Amendment rights to due process and a fair trial. (Dkt. no. 48 at 8-12.)

The suppression of exculpatory evidence by a prosecutor "violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Favorable evidence is "material" if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). Any alleged *Brady* error must identify what evidence the prosecutor failed to disclose. *See Phillips v. Woodford*, 267 F.3d 966, 987 (9th Cir. 2001) (petitioner failed to show that "missing" report existed or that it contained exculpatory evidence). A *Brady* error may be predicated on a failure

1    to disclose deals for testimony made with a prosecution's witness. *Giglio v. U.S.*, 405

2    U.S. 150, 153-155 (1972).

3            At trial, defense counsel elicited testimony from Officer Francis Gabron that

4    Andrew Wiggins had admitted to him that he went to the house on the night in question

5    with Clark. (Exh. 28D at 38-39.) Gabron testified that Wiggins was not arrested.  (*Id.*)

6    Wiggins testified that he went to the house with Clark but that Wiggins had no intention

7    to rob anyone. (Exh. 28C at 21-42.) He stated that he only followed Clark's instructions

8    to empty the pockets of the other men as well as to take some stereo equipment and

9    put it in his car because Clark had pulled a gun on the group. (*Id.*)

10           Jessica Seitles testified that she drove into the driveway of her townhouse and

11   that Clark raised her garage door, came out of the garage, approached her vehicle, put

12   a gun in her face and demanded her purse. (Exhs. 27A, 27B.) Defense counsel asked

13   Seitles about a 2005 petty larceny conviction. (Exh. 27B at 4-5.) He also elicited

14   testimony from Seitles that later the same day of the incident she was arrested for

15   possession of methamphetamine. She testified that she pleaded guilty in that case,

16   "completed everything," and the case was closed. (*Id.* at 5.)

17           The Nevada Supreme Court rejected the claim on direct appeal:

18           Although Clark acknowledges that he did not file a discovery request, he
             claims that his constitutional right to conduct a full investigation and cross-
19           examination of the witnesses was violated because the State failed to
             disclose that, in exchange for their testimony, two witnesses received
20           favorable treatment with respect to criminal charges associated with this
             case. We conclude that this contention lacks merit.
21
             "*Brady* and its progeny require a prosecutor to disclose evidence favorable
22           to the defense when that evidence is material either to guilt or to
             punishment," including evidence that "provides grounds for the defense . .
23           . to impeach the credibility of the state's witnesses." *Mazzan v. Warden*,
             993 P.2d 25, 36, 37 (Nev. 2000). In this case, the record contains no
24           evidence beyond Clark's own assertion that two witnesses received
             favorable treatment with respect to criminal charges associated with this
25           case in exchange for their testimony. The record also contains no
             evidence indicating that the State withheld any information regarding the
26           two witnesses. Therefore, we conclude no *Brady* violation occurred.

27   (Exh. 55 at 2-3.)

28   ///

                                        7

The existence of any deal or agreement is a factual question, and any factual determination of this issue made by a state court "shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). Moreover, as the Nevada Supreme Court pointed out, no evidence whatsoever supports Clark's bare assertion that any *Brady* violation occurred. This Court discerns nothing in the state-court record to support the contention that the State provided any benefit to Wiggins or Seitles for their testimony. Further, as his trial examinations indicate, Clark's counsel was well aware that Wiggins was not charged and elicited that fact for the jury. He also questioned Seitles about her drug arrest the same day of the incident and her subsequent conviction.

Accordingly, this Court concludes that Clark has failed to rebut the presumption that the state-court factual finding was correct. 28 U.S.C. § 2254(e)(1) (petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence). Clark has failed to demonstrate that the Nevada Supreme Court's decision is contrary to, or involves an unreasonable application of, clearly established federal law, as determined by the U.S. Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Federal habeas relief is denied as to ground 1.

**B.    Ground 2(A)**

Clark asserts that trial counsel rendered ineffective assistance of counsel in violation of his Sixth and Fourteenth Amendment rights because he failed to interview Wiggins, Seitles and Joe Buckles (Seitles' boyfriend and one of the men present in the garage during the incident). (Dkt. no. 48 at 13-16.) He claims generally that their criminal backgrounds could have provided valuable impeachment material in front of the jury. (*Id.* at 13.)

As discussed above, trial counsel elicited testimony from Wiggins that he had not been charged in connection with this case and that no one had made him any promises in exchange for his testimony. (Exh. 28D at 12.) Trial counsel elicited testimony from ///

8

1   Seitles that she was arrested that same day on a drug charge and ultimately convicted.

2   (Exh. 27B at 4-5.)

3       At the evidentiary hearing on Clark's state postconviction petition, his trial

4   counsel testified that he had read the statements of these witnesses — which were not

5   helpful to Clark — and that he had obtained their criminal histories from the State. (Exh.

6   68B at 10-11; 34.)  He also testified that he knew of no deal or benefit conferred by the

7   State on Wiggins or Seitles for their testimony and that he had no reason to believe they

8   had received "special treatment." (*Id.* at 17-18.)

9       Affirming the denial of this claim, the Nevada Supreme Court agreed with the

10  state district court that Clark failed to explain what the investigations into these

11  witnesses would have yielded or how they would have produced a different outcome at

12  trial. (Exh. 105 at 3.) This Court also notes that defense counsel testified that he had in

13  fact obtained the witnesses' criminal histories.

14      Clark has not met his burden of demonstrating that the Nevada Supreme Court's

15  decision is contrary to, or involves an unreasonable application of, *Strickland*, or was

16  based on an unreasonable determination of the facts in light of the evidence presented

17  in the state court proceeding. 28 U.S.C. § 2254(d). The Court, accordingly, denies

18  ground 2(A).

19      **C.    Ground 2(B)**

20      Clark contends that trial counsel was ineffective because he failed to file an

21  omnibus discovery motion prior to trial. (Dkt. no. 48 at 16-18.) The Nevada Supreme

22  Court affirmed the denial of this claim and agreed with the state district court that Clark

23  failed to demonstrate that the State withheld evidence from the defense and that Clark

24  failed to produce any undiscovered evidence that would have resulted in a different

25  outcome at trial. (Exh. 105 at 3.) As set forth above with respect to ground 1, Clark's

26  *Brady* claim fails, and therefore, any claim of prejudice necessarily fails. Clark has not

27  met his burden of demonstrating that the Nevada Supreme Court's decision is contrary

28  to, or involves an unreasonable application of, *Strickland*, or was based on an

1   unreasonable determination of the facts in light of the evidence presented in the state

2   court proceeding. 28 U.S.C. § 2254(d). Ground 2(B) is denied.

3       **D.    Remaining Claims in Ground 2**

4       The Nevada Supreme Court noted that the remaining claims in federal ground 2

5   were not properly before the district court but that the district court allowed Clark to

6   present testimony and make arguments during the evidentiary hearing on his state

7   postconviction petition. (Exh. 105 at 3-4.)

8           **1.    Ground 2(C)**

9       Clark asserts that trial counsel was ineffective because he failed to investigate

10  whether or not Clark's car had bullet holes. (Dkt. no. 48 at 17-19.) Clark had apparently

11  maintained that it was someone in the car that pursued them when they left the house

12  that fired shots, not him. (Exh. 68C at 2-3.) At the evidentiary hearing on Clark's

13  postconviction petition, he testified that he asked his trial counsel to investigate whether

14  there were bullet holes in his car. (*Id.*) However, Wiggins testified at trial that he and

15  Clark were in Wiggins' vehicle during the incident. (Exh. at 20-43.) Thus, in affirming the

16  denial of this claim, the Nevada Supreme Court pointed out that no evidence was

17  presented that Clark used his vehicle during the incident. (Exh. 105 at 4.)

18          **2.    Ground 2(D)**

19      Clark argues his counsel was ineffective because he was unprepared for expert

20  fingerprint testimony presented at trial. (Dkt. no. 48 at 19-22.) The Nevada Supreme

21  Court pointed out that there was no testimony that trial counsel was unprepared for the

22  fingerprint expert's testimony. (Exh. 105 at 4.) The state-court record indicates that

23  defense counsel elicited testimony from a fingerprint expert that no prints at the scene

24  were identified as belonging to Clark. (Exh. 27C at 8-9.) Defense counsel testified at the

25  evidentiary hearing on the state postconviction petition that he had reviewed all the

26  evidence, including fingerprint evidence, "on quite a few occasions" with the prosecutor

27  prior to trial "because we tried to resolve [the case]." (Exh. 68A at 47.)

28  ///

### 3.      Ground 2(E)

Clark asserts that trial counsel was ineffective because he failed to disclose a conflict of interest with the prosecutor. (Dkt. no. 48 at 22-24.) The Sixth Amendment right to counsel encompasses a right to representation free from conflicts of interest. *Lewis v. Mayle*, 391 F.3d 989, 995 (9th Cir.2004). Trial counsel testified at the postconviction petition evidentiary hearing that he knew the prosecutor, that they had had many professional disagreements over cases over the years, and that several years ago he had had lunch with the prosecutor and they had an argument over their personal views of inter-racial dating. (Exh. 68A at 40-44; Exh. 68B at 18-19.) The Nevada Supreme Court affirmed the denial of this claim, concluding that the fact that trial counsel and the prosecutor had lunch five years before trial did not demonstrate a conflict. (Exh. 105 at 3-4.)

### 4.      Ground 2(F)

Finally, Clark contends that trial counsel was ineffective because he failed to obtain or listen to a copy of the 911 call placed the night of the incident. (Dkt. no. 48 at 24-26.)

The State first played the 911 call during trial outside of the presence of the jury because defense counsel said: "I'd like to hear it." (Exh. 28A at 22.) The call was played for the jury when the caller was on the stand. (*Id*. at 24.) Defense counsel cross-examined the caller, who was one of the people present during the incident. (*Id*. at 24-46, 49-50.) In affirming the denial of this claim, the Nevada Supreme Court reasoned that Clark failed to explain how trial counsel's possession of the 911 call before trial would have produced a different trial outcome. (Exh. 105 at 4.)

These remaining claims — grounds 2(C), (D), (E), and (F) — are meritless. Clark further fails to show that he suffered prejudice from the alleged ineffective assistance. Clark has therefore failed to demonstrate that the Nevada Supreme Court's determinations were contrary to, or involve an unreasonable application of, *Strickland*, or were based on an unreasonable determination of the facts in light of the evidence

presented in the state court proceeding. 28 U.S.C. § 2254(d). Federal habeas relief is denied as to all claims in grounds 2(C), (D), (E), and (F).

Accordingly, the petition is denied in its entirety.

## IV. CERTIFICATE OF APPEALABILITY

This is a final order adverse to the petitioner. As such, Rule 11 of the Rules Governing Section 2254 Cases requires this Court to issue or deny a certificate of appealability (COA). Accordingly, the Court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).  For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id.*

Having reviewed its determinations and rulings in adjudicating Clark's petition, the Court finds that none of those rulings meets the *Slack* standard. The Court therefore declines to issue a certificate of appealability for its resolution of any of Clark's claims.

It is therefore ordered that the first-amended petition (dkt. no. 48) is denied in its entirety.

It is further ordered that a certificate of appealability is denied.

It is further ordered that respondents' motion to extend time to file a response to the petition (dkt. no. 57) and petitioner's motion to extend time to file a reply to the answer (dkt. no. 59) are both granted *nunc pro tunc*.

///

///

1    It is further ordered that the Clerk enter judgment accordingly and close this

2  case.

3    DATED THIS 30th day of March 2016.

4

5                                    _____

6                                    MIRANDA M. DU
                                     UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28